# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LES LEVINE<br>52 Parkside Circle<br>Levittown, PA 19056<br><br>　　　　Plaintiff,<br>　　v.<br><br>OPEX CORPORATION<br>305 Commerce Drive<br>Moorestown, NJ 08057<br><br>　　　　Defendant. | :<br>:<br>:　CIVIL ACTION<br>:<br>:　DOCKET NO.:<br>:<br>:<br>:<br>:<br>:<br>:　**JURY TRIAL DEMANDED**<br>:<br>:<br>: |

## CIVIL ACTION COMPLAINT

Les Levine (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against the Opex Corporation (*hereinafter* referred to as "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), and the New Jersey Law Against Discrimination ("NJ LAD").[1]  Plaintiff asserts, *inter alia*, that he was discriminated against and unlawfully terminated by Defendant.  As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff intends to amend his complaint to include disability discrimination and retaliation claims under the ADA once his claims have been administratively exhausted with the Equal Employment Opportunity Commission ("EEOC") and the EEOC issues a right-to-sue letter.

**JURISDICTION AND VENUE**

2. Plaintiff resides in and is a citizen of Pennsylvania.

3. The Opex Corporation is incorporated under the laws of New Jersey with headquarters and/or principal places of business in same, rendering it a citizen of New Jersey.

4. This Court, in accordance with 28 U.S.C. 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Pennsylvania, Defendant is a citizen of New Jersey, and the amount in controversy exceeds $75,000.

5. This action is also being initiated pursuant to federal laws (ADA and FMLA) and therefore, the United States District Court for the District of New Jersey also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

6. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

7. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

8. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9. Plaintiff is an adult individual, with an address as set forth in the caption.

10. The Opex Corporation manufactures and supplies document imaging, mailroom automation, and material handling solutions, with headquarters at the address as set forth in the above-caption.

11. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Plaintiff was employed by Defendant for approximately 2 years, from in or about January of 2018 until his unlawful termination (discussed further *infra*) on or about March 20, 2020.

14. At the time of Plaintiff's termination, he was physically working in a warehouse (within Florence, New Jersey) operated by Amazon and placed therein by Defendant; however, Defendant is headquartered at 305 Commerce Drive, Moorestown, New Jersey 08057.

15. Plaintiff was employed in the position of Field Service Technician. Plaintiff and other employees with his job title were generally referred to as "Field" technicians because they would go to or relocate amongst different customer sites as necessary where they were often then based for short or long durations (as needed or per contracts with such third-party customers).

16.     Plaintiff's role as a Field Service Technician in the aforesaid Florence, New Jersey warehouse was to repair and maintain robots there.

17.     Toward the latter part of his employment with Defendant, and through the date of his termination, Plaintiff was supervised directly by Regional Automation Manager, Eric Scott (*hereinafter* "Scott").  Upon information and belief, Scott typically supervised approximately 12-15 employees performing similar roles to Plaintiff.

18.     Throughout his employment with Defendant, Plaintiff was a hard-working employee who performed his job well.

19.     Plaintiff has and continues to suffer from several health conditions associated with his feet (and resulting complications).

20.     As a result of his aforesaid serious health conditions, Plaintiff suffers from foot pain and swelling and mobility issues, which (at times) limits his ability to perform some daily life activities, including but not limited to walking, standing, and working (among other daily life activities).

21.     Despite his aforementioned health conditions and limitations, Plaintiff was still able to perform the essential duties of his job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times (discussed *infra*).

22.     Beginning in or about November of 2019, Plaintiff requested that Scott assign him a little less work (as Plaintiff was doing more work than would be assigned to 1 person typically when other employees would call out and were unavailable), because the work was causing Plaintiff's feet to swell and his aforesaid health conditions were worsening (i.e. Plaintiff was having to ice and elevate his feet continually, and he was in excruciating pain.)  However, instead of accommodating Plaintiff, Scott simply told him to "be a team player" and do the work.

23. Plaintiff was ultimately diagnosed with cellulitis and Avascular Necrosis. As a result, Plaintiff required and was approved for a medical leave of absence under the Family and Medical Leave Act ("FMLA"), which he commenced on or about December 26, 2019, with an anticipated return to work date of March 20, 2020.

24. During this time period, Plaintiff, as well as management, knew that the contract between Defendant and Amazon at the Florence, New Jersey location was coming to an end in or about the first week of February 2020.[2] However, Plaintiff had no concern whatsoever that he could or would be affected by any job separation, as it was typical to simply be relocated to a new customer or to be transferred.

25. Throughout the duration of Plaintiff's FMLA leave, he was in contact with at least 3 management-level employees of Defendant, including but not limited to Scott, Human Resources ("HR") Recruiter, Stephanie Rush (*hereinafter* "Rush"), and HR Director, Jeffrey Stoner (*hereinafter* "Stoner"), regarding the status of his health conditions, his intent to return to work, his anticipated site placement upon his return, and his return to work date.

26. For example, Plaintiff had repeatedly inquired about where he would be transferred upon his return from FMLA leave, **expressly stating** he would work in **any** state (as he and his wife had no problem traveling or relocating); however, Plaintiff was repeatedly told by Defendant's management-level employees they would not discuss the issue with him ***because he was on FMLA leave***.

27. While Plaintiff did not expect Defendant to require him to perform work during an FMLA leave, he believed it to be absolutely discriminatory to single him out by refusing to discuss his continued work, transfer, and availability solely because he had exercised his FMLA rights.

---

[2] Upon Plaintiff's information and belief, a competitor of Defendant assumed the same or similar responsibilities that Defendant had performed for Amazon thereafter.

5

Moreover, upon Plaintiff's information and belief, other employees not on FMLA leave would have immediate transfer options discussed with them.

28. On or about March 20, 2020, Plaintiff informed HR that his doctor had medically cleared him to resume working.

29. As Plaintiff had been cleared to return to work on March 20, 2020, he expected Defendant's management *to finally* discuss the potential of his transfer and/or new assignment as of that date. Instead, Plaintiff was blindsided by a letter from Defendant that he was terminated effective March 20, 2020.

30. Prior to Plaintiff's abrupt termination Defendant's management refused to communicate with Plaintiff about his continued or relocated role nor was he offered relocation/transfer/ hire opportunities unlike other employees who were not exercising their FMLA entitlements/rights.

31. Plaintiff was selectively terminated as a result of his serious health conditions and/or request for accommodations because (1) less qualified and/or senior employees in similar roles were kept in lieu of Plaintiff; (2) Plaintiff specifically asked about open positions in other states such as Wisconsin, Ohio and New York (explicitly explaining he would work anywhere); (3) Defendant's management informed Plaintiff that *no positions were open or available to him*, despite the fact that, upon Plaintiff's information and belief, there were several open position including at least one Field Service Technician position in New York; and (4) Plaintiff was not offered any actual open positions for which he was willing to relocate.

32. Plaintiff believes and therefore avers that he was terminated and/or not reinstated to an alternative role because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations (discussed *supra*); and/or (4) Defendant's failure

to properly accommodate Plaintiff by failing to reinstate him to his same or similar role following his return from medical leave.

### COUNT I
### Violation of the New Jersey Law Against Discrimination (NJ LAD)
### ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

33. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

34. Plaintiff suffered from qualifying health conditions under the NJ LAD which affected his ability (at times) to perform some daily life activities, including but not limited to walking, standing, and working (among other daily life activities).

35. Plaintiff kept Defendant's management informed of his serious medical conditions and need for medical treatment and other accommodations.

36. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant; however, Plaintiff did require reasonable accommodations at times.

37. Plaintiff requested reasonable accommodations from Defendant, including but not limited to slightly less work (as Plaintiff was doing more work than would be assigned to 1 person typically when other employees called out or were unavailable) and a medical leave of absence.

38. Plaintiff was abruptly terminated from his employment with Defendant in close proximity to his requests for/utilization of reasonable accommodations, effective **the same day** he informed Defendant that he was released by his doctor to return to work full-duty.

39. Upon Plaintiff's information and belief, Defendants failed to accommodate Plaintiff by refusing to accommodate his request for slightly less work (discussed *supra*) and failing to return him to his same or similar position upon his return from medical leave.

40. Plaintiff believes and therefore avers that because he was terminated and/or not reinstated to an alternative role because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations (discussed *supra*); and/or (4) Defendant's failure to properly accommodate Plaintiff by failing to reinstate him to his same or similar role following his return from medical leave.

41. These actions aforesaid constitute violations of the NJ LAD.

## COUNT II
### Violations of the Family and Medical Leave Act ("FMLA")
(Interference & Retaliation)

42. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

44. Plaintiff requested leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

45. Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

46. Defendant is engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

47. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

48. Plaintiff requested FMLA leave from on or about December 26, 2020 until on or about March 20, 2020.

49. Plaintiff was terminated in close proximity to his requests for/utilization of FMLA leave.

50. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; (4) making negative comments and/or taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA; and (5) failing to reinstate Plaintiff to his same or similar position upon his return from FMLA leave.

51. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.   Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.   Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.   Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

G.   Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: May 20, 2020